**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ASSOCIATION OF CITIZENS TO** | ) | |
| **PROTECT AND PRESERVE THE** | ) | |
| **ENVIRONMENT OF THE OAK** | ) | |
| **GROVE COMMUNITY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | **Case Number: 2:07-cv-378** |
| | ) | |
| **UNITED STATES FEDERAL** | ) | |
| **AVIATION ADMINISTRATION,** | ) | |
| **RANS BLACK, in his official** | ) | |
| **capacity as Jackson Airport's** | ) | |
| **District Office, KEAFUR GRIMES, et al,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Comes now the Plaintiff, by and through counsel, and hereby responds to

Defendant Federal Aviation Administration's Motion to Dismiss as follows:

**I. Summary of Proceedings:**

This is a suit filed by the Plaintiff to require the Defendant to follow its own

regulations and procedures as it relates to an environmental study of the effects of an

expansion of the Troy Municipal Airport in Troy, Alabama.  The thrust of the Plaintiff's

suit is two-fold:  First, the Plaintiff alleges that the Defendant's "Finding of No

Significant Impact," and the concomitant decision not to initiate an Environmental

Impact Study, is inconsistent with the factual findings and FAA regulations governing

this matter.  Second, the Plaintiff alleges that the Defendant failed to follow a procedural

regulation mandating that changes in mitigation measures must be reviewed by the

agency.  The Defendant has filed a Motion to Dismiss the Complaint on jurisdictional

grounds, alleging that the United States Eleventh Circuit Court of Appeals has original

jurisdiction of this matter.

      The Plaintiff disagrees with the Defendant's contention on two grounds.  First, the

decision by the Federal Aviation Agency ("FAA") is not a "final order" of that Agency

as that term is defined in this context.  Second, even if the Court of Appeals has

jurisdiction over the environmental study decision, the Complaint states a separate cause

of action under the Administrative Procedure Act for the Defendant's failure to follow its

own regulations regarding changes to mitigation measures in the environmental

assessment completed in this matter.

## II.  Law and Argument:

### A.  Environmental Study Flaws:

      The Plaintiff concedes that in most circumstances, the Defendant is correct in its

jurisdictional argument.  49 U.S.C. § 46110(a) provides that an interested party may

apply for judicial review of an FAA "order" in a United States Court of Appeals.  This

section goes on to state that the federal appellate courts have exclusive jurisdiction over

these claims.  49 U.S.C. § 46110(c).

      However, the statute at issue does not apply to all decisions issued by the FAA.

The Courts of Appeal may only undertake judicial review of "final orders" issued by the

FAA.  *See City of Dania Beach v. Federal Aviation Administration*, 485 F.3d 1181 (DC

Cir. 2007) and *Aerosource, Inc. v. Slater*, 142 F.3d 572 (3rd Cir. 1998).

      In this case, the order in controversy is the "Finding of No Significant Impact"

("FONSI") issued by Rans Black of the FAA.  (Ex. B to Complaint).  Despite its

conclusionary language to the contrary[1],  this is not a "final order" issued by the FAA.

Thus, the statute divesting this Court of jurisdiction is inapplicable.

The alternative chosen by the City of Troy to extend the runway will require the

destruction of 13 acres of wetlands and filling of a 5-acre lake.  (Ex. A to Complaint at

38-40 and Appendix E; Ex. B to Complaint).  An Executive Order requires federal

agencies to avoid wetland destruction whenever there is a practicable alternative.

Ex.Ord. 11990.  The FAA addressed this issue in the FONSI.  In particular, it is the

following language regarding wetland mitigation in the FONSI that robs it of its finality

under the statute:

> Wetlands
>
> …A mitigation plan will be prepared that will compensate for the impacts
> associated with the project.  A preliminary mitigation plan is given in
> Appendix E.
>
> Mitigation Measures
>
> 9.  Due to wildlife concerns and other concerns expressed during the
> public hearing, the city will be required to finalize their wetland
> mitigation plan prior to the start of construction to eliminate any creation
> of wetlands in the vicinity of the proposed project.

(Ex. B to Complaint)

The plain language of these sections of the FONSI clearly disqualifies it from

being considered a "final order".  The FONSI first states that "a mitigation plan will be

prepared" and that a preliminary plan is found at Appendix E.  The mitigation plan found

at Appendix E calls for the creation of wetlands on-site.  The same FONSI goes on to

state  that "the city will be required to finalize their wetland mitigation plan prior to the

start of construction" and that it should <u>eliminate</u> creation of wetlands on-site.

---

[1] The FAA's characterization of its own action is not determinative of this issue.  *Sierra Club v. Skinner*, 885 F.2d 591 (9th Cir. 1989).

Two points are to be made here.  First, the FONSI approves and disapproves of the wetland mitigation plan in the same decision.  Second, it is clear that the FONSI is not final.  It states that a mitigation plan "will be prepared" and that the city should "finalize" their plan prior to construction.  These are events that will occur in the future and cannot be final by the very words chosen to describe them.

In interpreting whether an FAA's decision regarding the status of an aviation parts repair service was a final order, the Third Circuit said the following:

> An order's finality is "informed but not decided by an agency classification" and is characterized by the following five factors: (1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate review would speed enforcement of the relevant act.

*Aerosource, Inc. v. Slater*, 142 F.3d 572, 579 (3rd Cir. 1998).

It is abundantly clear that the FONSI at issue in this case does not possess the requisite characteristics of finality suggested by *Aerosource*.  That being the case, the Defendant's attempt to deprive this Court of jurisdiction over Plaintiff's claims is due to be denied.

B.  Administrative Procedure Act Violation:

The Plaintiff also asserts a claim under the Administrative Procedure Act (5 U.S.C. 702).  This is essentially a claim under the Act that the FAA failed to follow its own regulations enacted pursuant to the National Environmental Policy Act (NEPA) 42 U.S.C. § § 4321, *et seq.*, and thus, adversely affected the rights of the Plaintiff.

As noted in the Complaint, the City initially proposed the "creation" of twenty-

four acres of wetland habitat on-site to offset the loss of the wetlands destroyed by the project. In the FONSI, the FAA determined that this plan was not workable and ordered the City to "eliminate any creation of wetlands in the vicinity of the proposed project." Despite being aware that wetlands would be destroyed, the FAA issued a FONSI with no mitigation plan for the wetlands.

More importantly, for the purposes of the Plaintiff's Complaint, the FAA has violated its own regulation insofar as the mitigation plan for wetlands is concerned. On March 14, 2006, the City of Troy applied to the U.S. Army Corps of Engineers for a "Section 404" permit to dredge and fill the wetlands at issue in this case. In the City's application to the Army, the City abandoned its plan to create wetlands on site or in an approved off site location. Instead, the City proposed to the Corps a plan of purchasing 20.06 acres of forested wetland credits from the McClamore Mitigation Bank in Elmore County, Alabama.[2] (Atch "B" to this Motion).

The City's decision to alter the mitigation plan obligates the FAA to re-consider the FONSI issued in this case. According to FAA regulations, "proposed changes in or deletion of a mitigation measure that was included as a condition of approval of the FOSNI must be reviewed by the same FAA office that reviewed the original FONSI and must be approved by the same approving official." FAA Order 1050.1E, para 405g(4).

It is important to remember that the FONSI has <u>no</u> mitigation plan regarding the destruction of wetlands. As noted above, the FAA referred to the mitigation plan in the FONSI and then stated that this plan would not work because it called for the creation of wetlands on-site. Secondly, the Plaintiff has no information, despite requesting it from

---

[2] Alarmed at this turn of events, counsel for the Plaintiff wrote the FAA alerting them of the change. (Atch "A" to this Motion). No response was received regarding this inquiry.

Defendant Grimes, that the FAA has met its obligations under the above-quoted regulation.  The failure of the FAA to review and approve the change in mitigation measures (creation of wetlands on-site v. purchasing wetland credits) is a violation of the FAA's own regulation.  By failing to follow its own regulatory guidance, the FAA has violated the Administrative Procedure Act.

## III.  <u>Summary</u>:

The Defendant is correct in its assertion that judicial review of FAA orders are within the exclusive jurisdiction of the Eleventh Circuit.  However, this fairly narrow right of review is only applicable to "final orders."  In this case, it is clear that the FONSI issued by the FAA was not final.  It contained contingencies that, by regulation, must be reviewed by the Agency before implementation.  An order containing contingencies cannot be final—the two terms are mutually exclusive.

A motion to dismiss should be granted only when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.  *Locke v. SunTrust Bank*, 484 F.3d 1343 (11th Cir. 2007).  The Plaintiff has alleged a prima facie case of a violation of the Administrative Procedure Act and, if those allegations prove to be true, would entitle the Plaintiff to relief in this matter.   That being the case, the Defendant's Motion to Dismiss is due to be denied.

Respectfully submitted,

s/ Benjamin M. Bowden
Benjamin M. Bowden (BOW035)
ASB-1909-N43B
Attorney for Plaintiff
Albrittons, Clifton, Alverson,
Moody & Bowden, P.C.

Post Office Drawer 880
Andalusia, Alabama 36420
Telephone : (334)-222-3177
Fax:  (334)-222-2696
E-mail: bbowden@albrittons.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the efile.alacourt system which shall send notification of such filing to the following counsel of record which includes:

Stephen Michael Doyle
stephen.doyle@usdoj.gov

Further, I have served via U.S. Mail the following parties:

Mr. Rans Black
Jackson Airports District Office
100 West Cross Street, Suite B
Jackson, Mississippi 39208-2307

Mr. Keafur Grimes
Jackson Airports District Office
100 West Cross Street, Suite B
Jackson, Mississippi 39208-2307

s/ Benjamin M. Bowden
OF COUNSEL

# ATTACHMENT

# A

ALBRITTONS, CLIFTON, ALVERSON, MOODY & BOWDEN, P.C.

ATTORNEYS AT LAW

109 OPP AVENUE

P.O. DRAWER 880

ANDALUSIA, ALABAMA 36420-0880

JAMES R. CLIFTON
WILLIAM B. ALVERSON, JR.
THOMAS B. ALBRITTON
JULIE S. MOODY
BENJAMIN M. BOWDEN

TELEPHONE (334) 222-3177
TELECOPIER (334) 222-2696
www.albrittons.com

February 20, 2006

Mr. Keafur Grimes
U.S. Department of Transportation
Federal Aviation Administration
Airport District Office
100 West Cross Street, Suite B
Jackson, Mississippi  39208-2307

RE: Troy Municipal Airport

Dear Mr. Grimes:

I recently received a copy of a grant application from the City of Troy to begin the process of land acquisition for the expansion of the Troy Municipal Airport.  It was submitted on August 19, 2005 by the Honorable Jimmy Lunsford, the Mayor of Troy.  In the justification section of the grant, there is a discussion of wetland mitigation.  According to the justification, the City expects to "offset the impacts associated with the proposed project by either purchasing credits from an approved wetland mitigation bank or by creating, restoring, and enhancing wetlands at an approved off-site location.

I am concerned because the justification for the grant application is significantly different than the plan submitted in support of the environmental assessment completed by the City of Troy and signed by you on August 9, 2005.  In the environmental assessment, the City stated that they expected to mitigate the destruction of wetlands by creating twenty-four (24) acres of wetland habitat on site.

It appears from the grant application that the City's plans have changed with regard to their mitigation efforts.  I ask that you look into this matter immediately so that we can be

EDDY ALBRITTON, LAWYER (1887-1965)
ALBRITTON & ALBRITTON (1945-1965)
POWELL ALBRITTON & ALBRITTON (1965-1983)
POWELL & ALBRITTON (1983-1985)

POWELL, ALBRITTON, & ALBRITTON (1985-1992)
ALBRITTONS & ALBRITTON (1992-1973)
ALBRITTONS & BOWDEN (1973-1988)

ALBRITTONS, GIVHAN, & ALBRITTON (1989-1992)
ALBRITTONS, GIVHAN, CLIFTON, & ALVERSON (1992-1995)
ALBRITTONS, CLIFTON, & ALVERSON, P.C. (1995-1998)
ALBRITTONS, CLIFTON, ALVERSON & MOODY, P.C. (1998-2000)

assured that the City's plan for wetland mitigation has received the proper approval of the Federal Aviation Administration.

Thank you for your time and attention to this matter.

Sincerely,

*[signature]*

Benjamin M. Bowden

BMB/tb

# ATTACHMENT

# B

2047 WEST MAIN STREET, SUITE 1

P.O. BOX 279 (ZIP 36302)

DOTHAN, ALABAMA 36301

334 793 6266

334 793 4459 FAX

www.bargewaggoner.com

# BWSC
BARGE
WAGGONER
SUMNER &
CANNON, INC.

January 23, 2006
File 31442-00

Mr. Bill Bunckley
Chief Regulatory Branch
US ARMY CORPS OF ENGINEERS – MOBILE DISTRICT
Post Office Box 2288
Mobile, Alabama  36628-0001

RE:    **ADEM-COE JOINT 404-401 APPLICATION**
       **TROY MUNICIPAL AIRPORT EXPANSION**
       **PIKE COUNTY, ALABAMA**
       **JURISDICTIONAL NUMBER – ALJ03-00477-K**

Dear Mr. Bunckley:

On behalf of the City of Troy, I would like to submit the attached ADEM-COE Joint 404-401 Application for a Federal Dredge and Fill Permit.  Within this application, authorization is being sought to impact 18.00 acres of wetlands for the expansion of the existing runway and taxiway at the Troy Municipal Airport.  The proposal to upgrade and modernize the Troy Municipal Airport will provide a safe aviation facility that meets current Federal Aviation Administration (FAA) design standards.  The project will improve the existing local transportation network by allowing a full range of general aircraft, including business jets, to safely use the Troy Municipal Airport.

Within this package, I have enclosed a copy of the Wetland Mitigation Plan, Wetland Rapid Assessment Procedure, survey and legal description of the delineated wetland boundary and a map depicting the names and addresses of the adjoining property owners.

Should you have any questions or need additional information, please call me at (334) 793-6266.

Sincerely,

D. Keith Shippey
Environmental Planner

Enclosures

Copy:  ADEM (Montgomery), Field Operations Division
       Mr. Calvin Lott, City of Troy
       Mr. Keafur Grimes, FAA – Airports District Office
       Mr. Frank Farmer, ALDOT – Aeronautics Bureau
       Mr. Craig  Martin, Wetland Sciences

JAN  2 5  2006

R:\31\31442 - Troy AP\3144200\cvletter_application.doc

# TABLE OF CONTENTS

**Page**

1.0    FOREWARD ................................................................................    1

2.0    PROJECT DESCRIPTION..........................................................    1

3.0    EXISTING LAND USES ............................................................    1

4.0    WETLAND DELINEATION .......................................................    2

5.0    ECOLOGICAL ASSESSMENT OF IMPACT SITE....................    2

6.0    MITIGATION GOALS, OBJECTIVES and ................................    2
       PERFORMANCE STANDARDS

7.0    WETLAND FILL .......................................................................    4

8.0    WETLAND CLEARING..............................................................    4

9.0    WETLAND IMPACT SUNNARY ...............................................    4
       9.1 Fill.....................................................................................    4
       9.2 Clearing/Debris Removal ..................................................    5

10.0   BACKGROUND OF RATIONALE FOR MITOGATION ...........    5
       10.1 Mitigation Concept:  Purchase of Appropriate .................    5
            Bank Credits & On-Site Preservation

11.0   PROJECT SUMMARY ...............................................................    6

12.0   MITIGATION SPECIFICATIONS...............................................    6

13.0   CONCLUSIONS.........................................................................    6

# APPENDICES

APPENDIX A        AIRPORT LAYOUT PLAN
APPENDIX B        PLAN VIEW WETLAND IMPACTS
APPENDIX C        BOUNDARY SURVEY OF WETLANDS

## 1.0 Foreword

A dredge-and-fill permit is being sought to allow for the expansion of the existing runway and installation of a taxiway in association with the existing Troy Municipal Airport facility in an effort to comply with Federal Aviation Administration (FAA) design standards. The mitigation narrative is being provided here to provide information associated with project justification and discuss details associated with the proposed compensatory mitigation.

## 2.0 Project Description

In an attempt to provide a comprehensive wetland impact analysis, Barge Waggoner Sumner & Cannon, Inc. (BWSC) evaluated long term (10yrs) projected design requirements of the project in relation to consistency with FAA airport design guidelines The need for the extension of the runway was documented in a Runway Extension Justification Study prepared in 2003. The Runway Extension Justification Study demonstrated an existing and additional aviation demand that exceeds the FAA criteria for extending a runway at the airport from its existing length of approximately 5,000 feet to 6,500 feet. The performance characteristics of the turbojet aircraft expected to utilize the airport necessitates the additional runway length for enhanced safety and operational safety.

Based on these design projections the Troy Municipal Airport expansion project will require 2.0 acres of short term modifications to wetlands associated with runway expansion and the establishment of object free areas (OFA). Long term permanent impacts totaling 18 acres associated with the runway expansion and installation of a taxiway as designed within the plans and projected for construction on the western side of the existing runway.

## 3.0 Existing Land Uses

Property located within the vicinity of the proposed project consist primarily of rural residential with minor sections of land devoted to agricultural and hunting leases.

## 4.0 Wetland Delineation

Staff associated with Wetland Sciences performed a non-binding wetland delineation during **November 2002** and this effort was subsequently reviewed by United States Army Corps of Engineers personnel during March of 2003. The wetland jurisdictional line was verified and designated a formal approved jurisdictional file # **ALJ03-00477-K**. A survey and legal description of the delineated wetland boundary is attached to this report.

## 5.0 Ecological Assessment of Impact Site

Generally, the wetlands proposed for impact would be considered to fall into two distinct classifications. The primary wetland habitats proposed for fill associated with runway and taxiway expansion are characterized as hydrologically altered medium quality riparian systems. Impacts to this wetland typology total 13 acres.

Very few mature canopy trees remain within either of the areas proposed for fill. The few remaining mature canopy specimens include the sweetbay (*Magnolia virginiana*), sweetgum (*Liquidambar strraciflua*), Tulip poplar (*Liriodendron tulipifera*), and sycamore (*Platanus occidentalis*).

The second distinct wetland typology included within the proposed impact is associated with an open water system created by the emplacement of an earthen dam essentially impounding a former forested wetland. Total acreage associated with this proposed impact is 5 acres.

## 6.0 Mitigation Goals, Objectives, and Performance Standards

During site plan development, alternatives for accomplishing the airport facilities expansion were examined. The physical, environmental, and aeronautical constraints and advantages for extending each of the two existing runways, Runway 07/25, and Runway 14/32 were analyzed. Runway development alternatives examined included extending Runway 14/32, extending Runway 07 end and extending the Runway 25 end. However, the extension of the Runway 25 end was eliminated from review as a practicable alternative due to the significant physical, environmental, and social constraints. This alternative would generate significant environmental

impacts due to the extension of the runway and relocation of the Sikorsky Support Services access road through a large forested wetland associated with an unnamed tributary of Conecuh Creek. In addition, this alternative would require the relocation of County Road 105 and U.S. Highway 231. Finally, this alternative would cause the displacement of residences and businesses that are located on County Road 105 and U.S. Highway 231.

With regard to extending Runway 14/32, development cost and airspace considerations were the primary constraints. The removal of a hill on the approach to Runway 14 generates the largest cost among the alternatives considered. Cuts exceeding 35 feet in depth and the need to remove terrain to accommodate a precision or non-precision approach increase the cost for this alternative. Another significant cost item is the relocation of the Instrument Landing System and radar equipment.

In addition to the development cost associated with extending Runway 14/32, airspace considerations were also critical. The overflight of the urbanized areas of the city present a significant concern in regards to this alternative. The introduction of flights and aircraft noise over sensitive areas has the potential to generate opposition and controversy among the citizens of the city. As such, the development of Runway 14/32 presents more airspace and flight impacts than the extension of Runway 07.

Based on the information gathered for the different alternatives, it was recommended that the extending Runway 07 be adopted for the long-range plan development for providing a 6,500 foot, precision instrument runway at the airport. Major factors supporting this recommendation include airspace issues related to establishing an Instrument Landing System on Runway 14/32; the significantly higher development costs associated with extending Runway 14/32; and the cost of relocating the Instrument Landing System and radar equipment to Runway 14/32.

Avoidance of wetland impacts could not be accomplished due to the extensive wetland complex located in close approximation to the existing runway. Minimization of impacts to existing wetland resources was accomplished by the provision of temporary impact to wetlands which exist within the Object Free Area. The remaining wetland impacts are associated with the installation of the runway expansion area and runway safety area whose design is consistent to

3

strict Federal Aviation Administration guidelines. All wetland impacts proposed have been deemed un-avoidable.

## 7.0 Wetland Fill

Within this Plan the applicant proposes comprehensive impacts in an effort to provide a complete and thorough evaluation of the project in an effort to seek regulatory approval one time verses a partial submittal requiring regulatory approval numerous times or many aspects of the project over a long time frame. Therefore, it was decided to evaluate the project in a comprehensive manner. The runway expansion, taxiway, and runway safety area necessitate wetland filling totaling **18.00 acres**. These areas can not be avoided due to the orientation of the existing runway, and strict adherence to FAA design specifications. Impacts are associated with a narrow band of riparian forested wetlands which run perpendicular to the existing runway orientation. Of the 18.00 acres proposed for fill, 5.00 acres are associated with open water as the result of an impoundment.

## 8.0 Wetland Clearing

An object free area is required around the periphery of the runway for safety purposes. Object free areas located within wetlands total 2.0 acres and the design proposes to remove all timber and stumps, re-grade to pre-timber conditions and replant with facultative wetland grasses and ferns.

## 9.0 Wetland Impact Summary

### 9.1 Fill

In total, the applicant proposes the filling of 18.00 acres to complete the proposed airport expansion project. Of the eighteen acres, thirteen acres are composed of previously timbered, hydrologically altered forested wetlands. The remaining five acres of impact is associated with an open water area associated with a privately maintained earthen dam.

4

## 9.2 Clearing/Debris Removal

Object Free Areas comprise 2.0 acres of wetlands where impact will be temporary in nature due to the potential to restore grade and replant with low stature aquatic vegetation. Alteration within the OFA's is associated with clearing and stump removal for the purpose of developing the facilities peripheral areas to be in compliance with FAA standards.

The site development and construction project is part of a major economic development effort that will bring many needed jobs to Pike County. Rationales for the proposed mitigation plan, as well as the plan itself, are presented within this mitigation proposal.

## 10.0 Background of Rationale for Mitigation

Project owners and their representatives including their consultants have discussed design, engineering and environmental specifics with regulatory agency representatives and the information generated from such discussions have be incorporated in the design as provided with the overall mitigation plan. A detailed site assessment of the wetlands proposed for impact as well as the surrounding habitats was performed by representatives of Barge Waggoner Sumner & Cannon, Inc and staff associated with Wetland Sciences to examine the ecological status of the site and devise mitigation alternatives.

Wetland Sciences herein proposes the following mitigation plan for the expansion efforts associated with the Troy Municipal Airport to compensate for the filling of approximately **18.00 acres** and temporary impact to **2.0 acres** of Federally regulated jurisdictional wetlands.

## 10.1 Mitigation Concept: Purchase of appropriate Bank Credits & On-site Preservation

This proposed mitigation plan has been designed to offset the wetland impacts as follows:

1. The purchase of appropriate mitigation credits from the McClemore Mitigation Bank
2. The preservation of existing remaining wetlands via a conservation easement.

## 11.0 Project Summary:

1. Project Design: A copy of the Airport Layout Plan (ALP) exhibits the proposed improvements consistent with Federal Aviation Administration (FAA) design criteria is provided as Appendix A.

2. Mitigation: A detailed site plan depicting the wetland impact is provided in Appendix B.

3. Jurisdictional Determination: A jurisdictional review of the site was accomplished by staff of Wetland Sciences and verified by Ms. Cindy House-Pearson during March 2003. A formal survey of the approved jurisdictional boundary accomplished by representatives of BWSC is the basis for the resulting impact analysis and is provided in Appendix C.

## 12.0 Mitigation Specifications

As discussed within the preceding narrative, aviation constraints have eliminated the potential on-site mitigation alternatives due to potential hazards with wildlife. The proposed wetland impacts were evaluated by the WRAP which provides a functional assessment of the wetland impact in terms of functional loss as associated with the unavoidable wetland impacts. The WRAP evaluated two distinct wetland polygons; open water and forested. The open water component was scored .6165 functional units, and the forested wetland scored .727 functional units. Functional loss equates to the loss multiplied by the acres impacted. In total the airport expansion project incurs a 12.54 acre loss. Due to the fact that the project exists outside the McLemore Mitigation Bank Service Area, it was deemed appropriate to add a 1.60 multiplier to the credit purchase agreement. In total, the applicant agrees to purchase 20.06 forested wetland credits to offset the proposed fill activities.

## 13.0 Conclusions

In summary, the applicant proposes the utilization of the McClemore Mitigation Bank to offset the proposed impacts to medium and low quality, previously altered wetland resources associated with the runway expansion. The plan as proposed compensates for the wetland loss.

# APPENDIX A

# AIRPORT LAYOUT PLAN



AIRPORT LAYOUT DRAWING

TROY MUNICIPAL AIRPORT
TROY, ALABAMA

ALP APPROVAL BLOCK

# APPENDIX B

# WETLAND IMPACT PLAN

FORESTED WETLANDS TO BE FILLED (13.0 Ac.)

OPEN WATER TO BE FILLED (5.0 Ac.)

OBJECT FREE AREA, ALL TREES AND STUMPS TO BE REMOVED (2.0 Ac.)

EXISTING WETLANDS (TO REMAIN) (17.7 Ac.)

1"=300'

| FIGURE | IMPACTED WETLANDS |
| | TROY MUNICIPAL AIRPORT |
| | TROY, ALABAMA |

BWSC — BARGE WAGGONER SUMNER & CANNON, Inc.
Engineers, Planners, and Surveyors